RECEIVED
IN ALEXANDRIA, LA.

AUG 2 3 2013

TONY R. MOORE, CLERK
BY _____
    DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

_____

SHARON E. LANDRUM                         CIVIL ACTION NO. 11-2103

-vs-                                                 JUDGE DRELL

DOLGENCORP, LLC                           MAGISTRATE JUDGE KIRK

_____

## RULING

Before the Court is a Motion for Summary Judgment filed by Defendant. (Doc.
19). The time limits for responding have run, and no opposition has been submitted.
For the following reasons, the motion will be **GRANTED**.

I.      Background

On December 5, 2011, Plaintiff Sharon Landrum filed a Complaint against
Dolgencorp. d/b/a Dollar General Store ("Dollar General") alleging gender
discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964.[1]
(Doc. 1). Therein Ms. Landrum claimed Dollar General terminated her employment
after she and a male employee, Ambus Riggs, got into an argument at the Vidalia,
Louisiana Dollar General store location. (Doc. 1). In this action, Ms. Landrum claims

---

[1] Ms. Landrum did not assert a retaliation claim in her EEOC charge. (Doc. 25). "Title VII
requires employees to exhaust their administrative remedies before seeking judicial relief."
McClain v. Lufkin Indus. Inc., 519 F.3d 264, 273 (5th Cir. 2008). The United States Fifth
Circuit recognizes the distinction between discrimination and retaliation claims. Randel v.
U.S. Dept. of Navy, 157 F.3d 392, 395 (5th Cir. 1998). Because Plaintiff failed to exhaust her
administrative remedies for her retaliation claim, we must dismiss the retaliation claim.

1

she was terminated from Dollar General following the dispute. (Doc. 1). According to

Plaintiff, Mr. Riggs was not terminated from Dollar General, and was instead

transferred to another store, despite being charged with a crime from the verbal

altercation with Plaintiff. (Doc. 1).

The assertions in Ms. Landrum's Complaint were clarified during discovery.

According to her deposition testimony, during work on September 19, 2009 Ms.

Landrum was flattening cardboard boxes and placing them in a rolltainer at the back

retail space of the Dollar General store.[2] (Landrum Deposition, Doc. 19-3, pp. 63–64)[3].

Mr. Riggs walked up to where Ms. Landrum was working and "tied up" the netting

side of the rolltainer making it difficult for Ms. Landrum to place the flattened boxes

in the rolltainer. (Landrum, p. 64). When Ms. Landrum's effort to continue working

failed, the following exchange occurred, according to her testimony:

> Yeah. It was like that and he's watching me do that and he goes, "man"
> and just rolled his eyes back. I said, "Well, I had it going on but you kind
> of impeded on my work." I said, "I can't reach." And he said, "You so
> stupid." I said, "And don't call me stupid." And he came running at me.
> I was-- he had me pinned up against the doorway between the store
> and the warehouse, the door facing. He had me pinned up against the
> door facing with his finger in my face and just you know yelling at me
> saying-- and the only thing I can remember him saying is, "I will kill
> you."

(Landrum, pp. 64–65).

The manager on duty, Charla Broughton,[4] proceeded to the back of the store to

---

[2]   A rolltainer is a wheeled cart with three metal sides and one side made of netting that is
used to load and unload merchandise at a retail store. (Doc. 19-1).

[3]   Hereinafter referred to as "Landrum, p. _."

[4]   Plaintiff's deposition spells Ms. Broughton's first name as "Sharla," but Dollar General
correspondence indicates the proper spelling is "Charla." (Doc. 19-6).

break up the obvious argument. (Landrum, p. 67). In doing so, Ms. Broughton allowed

Plaintiff to go home. (Landrum, p. 75). Plaintiff's sister arrived to take her home, and

Plaintiff, at her sister's suggestion, called the police and filed a complaint against Mr.

Riggs. (Landrum, p. 77). The police interviewed both Plaintiff and Mr. Riggs about the

incident and issued them "tickets" for disturbing the peace. (Landrum, pp. 79, 82, 86).

After leaving Dollar General, Plaintiff advised her sister she had received a

ticket. (Landrum, p. 86). The sister, a former police officer in Vidalia, decided to speak

with and did speak with the Mayor and the Police Chief about the situation. (Lushute

Deposition, Doc. 19-5, pp. 37–39). However, Plaintiff knew nothing about the status of

the ticket until she called City Court before her scheduled November 18, 2009 court

date and discovered her case was not on the docket. (Landrum, p. 101).

According to store manager Shelia Boyles, Dollar General's policy is to suspend

an employee charged with a crime. (Boyles Deposition, Doc. 19-4, p. 36)[5]. Both Ms.

Landrum and Mr. Riggs were suspended from Dollar General following the incident

until conclusion of the criminal proceedings. (Boyles, p. 66).

A few days after the altercation, Plaintiff met with Emily Cochran, Dollar

General's district manager, and provided a written statement. (Landrum, pp. 91–92).

Shortly after that, Plaintiff called Dollar General's Employee Response Center to find

out the status of her suspension. (Landrum, p. 96). Ms. Cochran called Ms. Landrum

back and told her "she needed to get a letter from the D.A. saying there were no

charges and said that [she had] not been fired because it's still under investigation."

---

[5] Hereinafter referred to as "Boyles, p._."

(Landrum, p. 98). Plaintiff claims Ms. Cochran told her Dollar General would contact her in the future about her suspension status. (Landrum, p. 98).

Further according to Plaintiff, Dollar General never told Ms. Landrum it was terminating her employment. (Landrum, pp. 139–40). Further, after her call to Vidalia City Court in November 2009, Plaintiff never communicated to Dollar General that her ticket had apparently been dismissed (or at least removed from the court docket). (Landrum, p. 101). According to Ms. Landrum, she didn't know she "had to call and beg for [her] job back." (Landrum, p. 140).

However, unlike Ms. Landrum, Dollar General records show that in January 2010, Mr. Riggs called the Dollar General Employee Response Center to inquire whether he could return to work. (Doc. 19-7). Mr. Riggs provided information showing the charges were decided in his favor and was returned to work. (Boyles, pp. 68–69; Doc. 19-7).

According to Ms. Landrum, when she learned Mr. Riggs's employment was re-instated she did not attempt to contact Dollar General herself. Instead, she decided to have her attorney file charges of gender discrimination with the Equal Employment Opportunity Commission (EEOC). (Landrum, p. 114).

Contrary to Ms. Landrum's claim that she did not attempt to contact Dollar General, Sheila Boyles, one of the managers at the Vidalia store, remembers a different set of facts.

Q. Okay. How did you first learn that the charges had been dismissed?

A. Ambus [Riggs] was the first one to come and tell me, and he brought me the paper from the courts. But Sharon never did come and tell me. I

4

just automatically assumed since his had been dropped, hers had, also.

I think Sharon came about a week or so after Ambus had come and told me, to see about a job. And I told her, like I told him, it's here, you know, and I was trying my best to make sure they weren't working together, but we were going to have a very long discussion before either one of them came back to work.

But then I, you know, it was like, "Well, if he's here, I'm not coming back."

The comment was made from someone that -- uh -- I did not protect Sharon personally, so she was going to sue me. . . .

Q. Who or where did your conversation with Sharon take place?

A. In the office. In the back of the store.

(Boyles, pp. 32–33).

In the current motion, Defendant argues: (1) Plaintiff has no prima facie case because she was not terminated, but rather quit; (2) Mr. Riggs and Plaintiff were not similarly situated because Mr. Riggs actively sought to return to work while Plaintiff did not; (3) Defendant has a legitimate non-discriminatory reason for not returning Plaintiff to work; and (4) Plaintiff has no evidence to establish either pretext or gender bias as the reason Dollar General did not return her to work. (Doc. 19-1).

II.     Law and Analysis

        A. Motion for Summary Judgment

        A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving

5

party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). We consider all

"evidence in the light most favorable to the party resisting the motion." <u>Trevino v.</u>

<u>Celanese Corp.</u>, 701 F.2d 397, 407 (5th Cir. 1983). It is important to note that the

standard for a summary judgment is two-fold: (1) there is no genuine dispute as to

any material fact, *and* (2) the movant is entitled to judgment as a matter of law.

The present motion is unopposed, which prompts the Court to search for

additional guidance.

> A motion for summary judgment cannot be granted simply because
> there is no opposition, even if the failure to oppose violated a local rule.
> The movant has the burden of establishing the absence of a genuine
> issue of material fact and, unless he has done so, the court may not
> grant the motion, regardless of whether any response was filed.

<u>Hibernia Nat. Bank v. Administracion Cent. Sociedad Anonima</u>, 776 F.2d 1277, 1279

(5th Cir. 1985) (internal citations omitted). In this District, Local Rule 56.2 gives added

direction when summary judgment is unopposed: "All material facts set forth in the

statement required to be served by the moving party will be deemed admitted, for

the purposes of the motion, unless controverted as required by this rule."  Therefore,

since there is no opposition to Defendants' motion, all facts in the statement of

material facts are deemed as true for purposes of this Court's decision.

B. Title VII Gender Discrimination

In order to establish a prima facie case for gender discrimination under Title

VII, the plaintiff must prove she:

(1)     is a member of a protected group;
(2)     was qualified for the position at issue;
(3)     was discharged or suffered some adverse employment action by
        the employer; and

(4)     was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group.

McCoy v. City of Shreveport, 492 F.3d 551, 556–57 (5th Cir. 2007) (internal citations

omitted).

Once the plaintiff establishes a prima facie case of gender discrimination, the

burden shifts to the employer "to articulate a legitimate, nondiscriminatory . . . reason

for its employment action." Id. at 557. The employer is only required to produce

legitimate, nondiscriminatory reasons for the employment action and is not subject to

a credibility evaluation. Id.

> If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose. To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer.

Id. (internal citations omitted).

The facts in the record establish a prima facie case of gender discrimination

under Title VII for the purposes of summary judgment. The first, second, and fourth

elements of the prima facie case are straightforward: Ms. Landrum is a female and

was qualified for the position based on deposition testimony from Ms. Boyles.

(Boyles, p. 17). As to the fourth element, Ms. Landrum and Mr. Riggs are similarly

situated because they were both sales associates with Dollar General and were both

suspended after receiving tickets for disturbing the peace. See Barrientos v. City of

Eagle Pass, Tex., 444 F'Appx. 756, 759 (5th Cir. 2011); (Boyles, p. 36).

The third element requires the showing of an adverse employment action

which "include[s] only ultimate employment decisions such as hiring, granting leave,

discharging, promoting, or compensating." McCoy, 492 F.3d at 559 (quoting Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir. 2002). There is nothing in the record to create a factual dispute about whether Ms. Landrum would have been rehired following the ticket's dismissal. The record does not contain any evidence showing Dollar General would not have reinstated Plaintiff's employment. Rather, Plaintiff's own actions led to her unemployment because she either failed to notify Dollar General of the outcome of the ticket or decided not to return to work after being offered reinstatement. (Landrum, p. 114; Boyles, pp. 33–34). In either set of facts, Ms. Landrum's alleged adverse employment action of being removed from the payroll is based on her failure to return to work.

C. Conclusion

For the reasons detailed above, Defendant's Motion for Summary Judgment will be **GRANTED**. The case will be **DISMISSED WITH PREJUDICE**.

SIGNED on this 23 day of August, 2013 at Alexandria, Louisiana.

DEE D. DRELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT